# THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| SHAREE D., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, **Acting Commissioner of Social Security,** <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br> Case No. 2:23-cv-00024-JCB <br><br><br> Magistrate Judge Jared C. Bennett |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties in this case have consented to Judge Jared C. Bennett conducting all proceedings, including entry of final judgment.[1] Before the court is Plaintiff Sharee D.'s ("Plaintiff") appeal of Acting Commissioner of Social Security Kilolo Kijakazi's ("Commissioner") final decision determining that Plaintiff was not entitled to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.[2] After careful consideration of the written briefs and the complete record, the court concludes that oral argument is not necessary. Based upon the analysis set forth below, Plaintiff's arguments on appeal fail. Therefore, the court affirms the Commissioner's decision.

---

[1] ECF No. 9.

[2] 42 U.S.C. §§ 1381-1383f.

**PROCEDURAL BACKGROUND**

Plaintiff alleges disability due to various physical and mental impairments. Plaintiff applied for SSI in April 2020.[3] Plaintiff's application was denied initially[4] and upon reconsideration.[5] On March 8, 2022, Plaintiff appeared without counsel for a hearing before an Administrative Law Judge ("ALJ").[6] The ALJ issued a written decision on May 4, 2022, denying Plaintiff's claim for SSI.[7] Plaintiff appealed the adverse ruling, and, on November 18, 2022, the Appeals Council denied her appeal,[8] making the ALJ's decision final for purposes of judicial review.[9] On January 11, 2023, Plaintiff—who is now represented by counsel—filed her complaint in this case seeking review of the Commissioner's final decision.[10]

**STANDARD OF REVIEW**

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[11] The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[12] "Substantial evidence is such relevant evidence as a reasonable mind

---

[3] ECF No. 10, Administrative Record ("AR ___") 123-31.

[4] AR 61-70, 76-79.

[5] AR 71-75, 81-83.

[6] AR 30-60.

[7] AR 13-29.

[8] AR 1-6.

[9] 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 416.1481.

[10] ECF No. 5.

[11] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

[12] 42 U.S.C. § 405(g).

might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[13] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[14] "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[15]

The aforementioned standards apply to the Commissioner's five-step evaluation process for determining whether a claimant is disabled.[16] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[17]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [she] is, disability benefits are denied. If [she] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[18]

At step three, the claimant must show that his or her impairments meet or equal one of several listed impairments that are "severe enough to prevent an individual from doing any

---

[13] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[14] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[15] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (first alteration in original) (quotations and citation omitted).

[16] 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[17] 20 C.F.R. § 416.920(a)(4); *see also Williams*, 844 F.2d at 750.

[18] *Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)-(ii).

3

gainful activity, regardless of his or her age, education, or work experience."[19] "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[20] Before considering step four, however, the ALJ must determine the claimant's residual functional capacity ("RFC").[21] An individual's RFC is her greatest ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments.[22] In making that determination, the ALJ must consider all of the claimant's impairments, including impairments that are not severe.[23]

For the fourth step, the claimant must show, given her RFC, that her impairments prevent performance of her "past relevant work."[24] "If the claimant is able to perform [her] previous work, [she] is not disabled."[25] If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability."[26]

From here, "[t]he evaluation process . . . proceeds to the fifth and final step," where the burden of proof shifts to the Commissioner.[27] The decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age,

---

[19] 20 C.F.R. § 416.925(a); *see also id*. § 416.920(a)(4)(iii).
[20] *Williams*, 844 F.2d at 751.
[21] 20 C.F.R. § 416.920(e).
[22] *Id*. § 416.945(a)(1), (b)-(c).
[23] *Id*. § 416.945(a)(2).
[24] *Id*. § 416.920(a)(4)(iv).
[25] *Williams*, 844 F.2d at 751.
[26] *Id*.
[27] *Id*.

education, and work experience."[28] If it is determined that the claimant "can make an adjustment to other work," she is not disabled.[29] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits.[30]

## ANALYSIS

Plaintiff argues that the ALJ erred: (I) by failing to fully develop the record and, therefore, (II) by failing to appropriately assess Plaintiff's RFC. As demonstrated in order below, Plaintiff's arguments fail. Accordingly, the court affirms the Commissioner's decision.

### I. The ALJ Fulfilled His Duty to Develop the Record.

Plaintiff contends that the ALJ erred by failing to fully develop the record because the ALJ did not: (A) order consultative examinations concerning Plaintiff's mental and physical limitations, and (B) obtain certain of Plaintiff's medical records. "[T]he burden to prove disability in a [S]ocial [S]ecurity case is on the claimant,"[31] even where, as here, the claimant appeared pro se at the administrative level.[32] However, "[i]t is well established that a Social Security disability hearing is a nonadversarial proceeding, in which the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own

---

[28] *Id.* (quotations and citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(v).

[29] 20 C.F.R. § 416.920(a)(4)(v).

[30] *Id.*

[31] *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997); *see also Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 361 (10th Cir. 1993) ("The claimant . . . bear[s] the ultimate burden of proving that she is disabled under the regulations.").

[32] *Salas v. Califano*, 612 F.2d 480, 483 (10th Cir. 1979) ("We of course recognize that in a [Social Security case,] the claimant has the overall burden of establishing [her] claim. Such is true even though a claimant appears [p]ro se.").

version of those facts."³³ "The ALJ's duty to develop the record is heightened when a claimant is unrepresented. However, a claimant's pro se status does not, in and of itself, mandate a reversal."³⁴ Additionally, "it is not the ALJ's duty to be the claimant's advocate. Rather, the duty is one of inquiry and factual development."³⁵ "The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment. The duty to develop the record is limited to fully and fairly develop[ing] the record as to material issues."³⁶

    A.  <u>The ALJ Did Not Err by Failing to Order Consultative Examinations</u>.

The ALJ did not err by failing to order consultative examinations regarding Plaintiff's mental and physical limitations. An ALJ "has broad latitude in ordering consultative examinations."³⁷ The United States Court of Appeals for the Tenth Circuit has indicated that an "ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability."³⁸ More specifically, the Tenth Circuit has stated that such an examination may be necessary where "there

---

³³ *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993) (quotations and citations omitted).

³⁴ *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citations omitted).

³⁵ *Henrie*, 13 F.3d at 361 (citation omitted).

³⁶ *Hawkins*, 113 F.3d at 1168 (alteration in original) (quotations and citations omitted); *see also Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994) (stating that the ALJ's duty to develop the record "is not a panacea for claimants, . . . which requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning").

³⁷ *Hawkins*, 113 F.3d at 1166.

³⁸ *Id.* at 1169.

is a direct conflict in the medical evidence requiring resolution," "the medical evidence in the record is inconclusive," or "additional tests are required to explain a diagnosis already contained in the record."[39] However, "there is no need for a consultative examination when the ALJ has enough information to make a disability determination."[40]

Here, the ALJ had enough information in the record to make a determination about Plaintiff's disability. Therefore, as shown below, the ALJ did not err by failing to order consultative examinations concerning Plaintiff's: (1) mental limitations, and (2) physical limitations.

1. Mental Limitations

Plaintiff argues that the ALJ erred by failing to order consultative examinations regarding Plaintiff's mental limitations. More specifically, Plaintiff contends that the ALJ should have ordered a psychological evaluation of Plaintiff's agoraphobia, panic disorder, and major depressive disorder, as well as cognitive or neuropsychological testing to evaluate Plaintiff's cognitive deficits resulting from her March 20, 2021 stroke. Plaintiff's argument fails because the ALJ had sufficient information in the record to assess Plaintiff's mental limitations.

Plaintiff points to portions of the record that discuss her agoraphobia, panic disorder, major depressive disorder, and cognitive impairments.[41] Importantly, the ALJ discussed the

---

[39] *Id.* at 1166; *see also* 20 C.F.R. 416.919a(b) (providing examples of circumstances that may require a consultative examination).

[40] *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016); *see also Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008).

[41] AR 247, 354, 363, 370, 374, 411, 415.

presence of those impairments in his decision.[42] However, the ALJ also discussed evidence in the record indicating that, despite Plaintiff's mental impairments and repeated recommendations from her treating physician's assistant, Traci Lindenau ("Ms. Lindenau"), Plaintiff did not see a counselor or psychiatrist and failed to follow up with therapy.[43] The ALJ further discussed evidence showing that, after Plaintiff's stroke, her memory was intact; testing showed only a mild neurocognitive disorder; she could follow instructions; she had normal memory, attention, and fund of knowledge; she was only mildly anxious; she had a normal mood and affect; she did not have suicidal thoughts; and her inability to leave home was attributable in part to transportation issues, rather than solely her agoraphobia.[44]

       The evidence upon which the ALJ relied is sufficient to support his assessment of Plaintiff's mental limitations. Further, although the evidence in the record concerning Plaintiff's mental limitations is inconsistent, the ALJ was entitled to resolve any such inconsistencies without ordering further examination of Plaintiff.[45] Accordingly, the ALJ did not err by failing to order consultative examinations regarding Plaintiff's mental limitations.

---

[42] AR 23.

[43] AR 23, 374.

[44] AR 23, 283, 296, 343, 357, 370, 376, 415-16.

[45] *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("The ALJ was entitled to resolve such evidentiary conflicts and did so."); *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ is entitled to resolve any conflicts in the record."); *Whelchel v. Barnhart*, 94 F. App'x 703, 709 (10th Cir. 2004) ("Ultimately, it is up to the ALJ to weigh and resolve evidentiary conflicts, and we will not reweigh the evidence.").

2. <u>Physical Limitations</u>

Plaintiff maintains that the ALJ erred by failing to order a consultative examination concerning Plaintiff's physical limitations. Plaintiff's specific argument is that a consultative examination was required because "the evidence in the record is inconclusive" concerning Plaintiff's need for a walker.[46] Plaintiff bases that argument primarily upon the ALJ's statement in his decision that the "evidence is contradictory regarding [Plaintiff's] use of a walker."[47] Plaintiff's argument fails because, as stated above, the ALJ was entitled to resolve evidentiary inconsistencies in the record. Additionally, the ALJ's determination that there was contradictory evidence does not mean that the ALJ lacked sufficient evidence to assess Plaintiff's physical limitations and need for a walker. To the contrary, as shown below, the ALJ had adequate evidence to make that assessment.

Plaintiff cites to record evidence indicating that, after her stroke, she was prescribed a walker, suffered from weakness in the right side of her body, and continued to use her walker for ambulation.[48] Again, importantly, the ALJ discussed evidence concerning those limitations in his decision.[49] At the same time, the ALJ referenced evidence indicating that, shortly after Plaintiff's stroke, she had fluent speech, only slightly reduced strength in the right side of her body, and full strength in the left side of her body.[50] The ALJ also discussed evidence showing that, a few weeks later, Ms. Lindenau noted that although Plaintiff used a walker for gait, Plaintiff had no

---

[46] ECF No. 11 at 11.

[47] AR 23.

[48] AR 258, 342-44, 391, 411, 413, 415, 417.

[49] AR 22.

[50] AR 22, 263.

joint abnormalities and only mild weakness in her right upper and lower extremities.[51] The ALJ further discussed evidence from an examination approximately one month after Plaintiff's stroke, which showed that, although Plaintiff suffered from slightly reduced strength in the right side of her body, she reported that her symptoms had improved 50 percent from the time they started, she had normal coordination, and her station was normal.[52] The ALJ also noted evidence from an examination approximately seven months after Plaintiff's stroke, in which Ms. Lindenau indicated that Plaintiff had no joint abnormalities and a normal gait.[53] Finally, the ALJ referenced evidence from an examination nearly one year after Plaintiff's stroke, in which Ms. Lindenau noted that although Plaintiff reported that she used a walker, she did not bring her walker to the examination.[54]

      Contrary to Plaintiff's argument, the mere fact that there is contradictory evidence in the record does not compel the conclusion that the ALJ lacked sufficient evidence to assess Plaintiff's physical limitations and need for a walker. Again, when the ALJ was faced with inconsistent evidence, the ALJ was entitled to resolve any inconsistencies.[55] Further, because the evidence upon which the ALJ relied was adequate to allow him to assess Plaintiff's physical limitations and need for a walker, the ALJ did not err by failing to order a consultative examination concerning those issues.

---

[51] AR 22, 377.

[52] AR 22, 342-44.

[53] AR 22, 357.

[54] AR 22, 415, 417.

[55] *Allman,* 813 F.3d at 1333; *Haga,* 482 F.3d at 1208; *Whelchel,* 94 F. App'x at 709.

B.  <u>The ALJ Did Not Err by Failing to Obtain Plaintiff's Medical Records</u>.

The ALJ did not err by failing to obtain Plaintiff's medical records. Plaintiff correctly notes that, during the administrative hearing, the ALJ indicated that he would obtain Plaintiff's physical therapy records from Intermountain Health, which Plaintiff testified was her physical therapy provider.[56] Within one month after the administrative hearing, the ALJ requested the following information from Intermountain Health about Plaintiff: "medical history, psychiatric history, clinical findings, laboratory findings, imaging reports, treatment prescribed and the response, diagnosis, and prognosis."[57] Soon thereafter, the ALJ received the information from Intermountain Health.[58] The ALJ notified Plaintiff in writing that she had the right to take certain actions with respect to the new evidence and that if Plaintiff did not respond within ten days, the new evidence would be added to the record.[59] After Plaintiff failed to file any response within ten days, the ALJ added the new evidence to the record.[60]

Plaintiff now claims that the new evidence the ALJ received from Intermountain Health and entered into the record does not contain Plaintiff's physical therapy records, and, therefore, the ALJ did not fulfill his duty to fully develop the record. That argument fails because, despite having a full and fair opportunity to review the new evidence before it was entered into the record, Plaintiff failed to do so. The fact that Plaintiff was proceeding pro se at the administrative level does not alter that conclusion. The ALJ issued a broad request for information to the

---

[56] AR 46.

[57] AR 382.

[58] AR 240-41.

[59] *Id*.

[60] AR 16, 381-423.

physical therapy provider that Plaintiff identified during the administrative hearing, received that information, provided Plaintiff with an opportunity to respond to the information, and, eventually, added the information to the record. The ALJ was not required to do anything further to develop the record, particularly given that Plaintiff did not respond to the ALJ's invitation to respond concerning the new evidence. Even considering Plaintiff's pro se status at the administrative level, requiring more of the ALJ here would run counter to the principle that "it is not the ALJ's duty to be [Plaintiff]'s advocate."[61] Accordingly, Plaintiff's argument fails.

## II. The ALJ Did Not Err in Assessing Plaintiff's RFC.

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC by: (A) failing to engage in the proper analysis to determine whether Plaintiff needed a walker, (B) substituting his judgment for Ms. Lindenau's concerning Plaintiff's need for a walker, and (C) picking and choosing among the evidence. The court addresses each argument in order below and concludes that each one fails.

### A. The ALJ Did Not Err in His Analysis Regarding Plaintiff's Need for a Walker.

The ALJ did not err in his analysis concerning Plaintiff's need for a walker. Social Security Ruling ("SSR") 96-9p provides:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).[62]

---

[61] *Henrie*, 13 F.3d at 361.

[62] SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996); *see also Staples v. Astrue*, 329 F. App'x 189, 192 (10th Cir. 2009) (providing that a claimant "needs to present medical documentation establishing the need for the device").

Although the ALJ did not cite to SSR 96-9p, he did not err in his analysis regarding Plaintiff's need for a walker because it is implicit from his decision that he determined that a walker was not medically necessary. As discussed above, the record contained inconsistent evidence concerning whether Plaintiff needed a walker, and the ALJ was entitled to resolve those inconsistencies.[63] The ALJ did so and ultimately concluded that Plaintiff did not need a walker,[64] as reflected in the ALJ's assessment of Plaintiff's RFC.[65] The ALJ did not err in reaching that conclusion.[66] Additionally, Plaintiff has not pointed to any evidence in the record "describing the circumstances for which [Plaintiff's walker] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."[67] Thus, Plaintiff has not shown that the ALJ erred.[68]

---

[63] *Allman*, 813 F.3d at 1333; *Haga*, 482 F.3d at 1208; *Whelchel*, 94 F. App'x at 709.

[64] AR 23.

[65] AR 20.

[66] *See, e.g.*, *Froehlich v. Comm'r of Soc. Sec.*, No. CIV-17-1179-M, 2018 WL 3354998, at *5 (W.D. Okla. June 12, 2018) (concluding that "[s]ubstantial evidence support[ed] the ALJ's interpretation of the record and his reliance on [that] interpretation in opting not to include an assistive device in the RFC" where the record: (1) "contain[ed] conflicting evidence concerning the medical necessity of [the plaintiff]'s assistive device," and (2) "lend[ed] itself to two plausible conclusions concerning the medical necessity of [the plaintiff]'s [assistive device]"), *report and recommendation adopted*, No. CIV-17-1179-M, 2018 WL 3354884 (W.D. Okla. July 9, 2018).

[67] SSR 96-9p, 1996 WL 374185, at *7.

[68] For purposes of this decision, the court hesitantly assumes that Congress authorized judicial review of the ALJ's compliance with SSR 96-9p. Candidly, the court seriously doubts that Congress authorized the judiciary to review, much less remand, an ALJ's decision that fails to comply with an agency policy statement. By analogy, under the Administrative Procedure Act, numerous courts have held that they can enforce against an agency only that which has the force and effect of law because "[a] binding policy is an oxymoron." *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 537 (D.C. Cir. 1988). Although Social Security cases are not governed

B. <u>The ALJ Did Not Err by Substituting His Judgment for Ms. Lindenau's Concerning Plaintiff's Need for a Walker</u>.

The ALJ did not err by substituting his judgment for Ms. Lindenau's regarding Plaintiff's need for a walker. In the portion of her brief devoted to this argument, Plaintiff references only the ALJ's treatment of Ms. Lindenau's opinion in a report of a February 18, 2022 examination of Plaintiff. Plaintiff asserts that the ALJ erred in rejecting that opinion because he relied upon the fact that Ms. Lindenau's February 18, 2022 examination report provides that Plaintiff "states that . . . she uses a walker when she is out in the community."[69] Plaintiff also takes issue with the ALJ's reliance upon Plaintiff's failure to bring her walker to the examination, as well as the ALJ's failure to acknowledge that she was accompanied by her son at the examination. Plaintiff contends that the ALJ improperly rejected Ms. Lindenau's opinion on those bases.

---

by the Administrative Procedure Act, the judicial review provisions of the Social Security Act similarly provide that the judiciary's authority to review the Commissioner's decisions is limited to: (1) factual findings and (2) "*only* the question of conformity with [the Commissioner's] regulations and the validity of such regulations." 42 U.S.C. § 405(g) (emphasis added). This congressional limitation on judicial review is significant where, as here, SSRs do not have the force and effect of law or regulation. *Cf. Vietnam Veterans of Am.*, 843 F.2d at 537 (concluding that even though agency policy was binding against its employees, as far as the court was concerned, "the agency remains free in any particular case to diverge from whatever outcome the policy statement or interpretive rule might suggest" because policy is not law). Thus, the Social Security appellate tribunal or the Commissioner certainly can enforce SSRs against an ALJ's decision because, in the Executive Branch's world under Article II of the Constitution, such policies are binding. But in the judicial world under Article III, SSRs are not binding because a court lacks congressional authority to enforce a policy against an agency. To hold otherwise would mean that if an agency promulgated a regulation saying that its policies were "binding" on the agency, then all the agency's policies that it considered binding would have the force and effect of law even though those policies did not undergo the rigorous notice and comment rulemaking process under 5 U.S.C. § 553. This cannot be. An agency has the authority to enforce a policy as "binding" for its purposes, but a court cannot do so unless and until that policy receives the status of "law." Despite the foregoing jurisdictional misgivings, the court assumes, for purposes of this opinion only, that it can review the ALJ's compliance with a policy.

[69] AR 415.

Plaintiff's argument fails because Ms. Lindenau never issued an opinion about Plaintiff's need for a walker in the February 18, 2022 examination report. Although Ms. Lindenau's examination report references a walker in several places—including her observations that Plaintiff reported using a walker and that Plaintiff did not bring her walker to the examination—nowhere in the examination report does Ms. Lindenau render an opinion about Plaintiff's need for a walker. Therefore, the ALJ cannot fail to consider an opinion that was never offered.[70]

C. The ALJ Did Err by Picking and Choosing Among the Evidence.

The ALJ did not err by picking and choosing among the evidence. Plaintiff correctly notes that "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."[71] At the same time, "[t]he

---

[70] To the extent that Plaintiff intended to argue that the ALJ erred in his treatment of all opinions from Ms. Lindenau, such an argument would fail because it is inadequately briefed. Because the court acts as an appellate court in this case, it applies Tenth Circuit precedent related to inadequate briefing. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994) ("A district court is not exclusively a trial court. In addition to its *nisi prius* functions, it must sometimes act as an appellate court. Reviews of agency action in the district courts must be processed *as appeals*. In such circumstances the district court should govern itself by referring to the Federal Rules of Appellate Procedure." (emphasis in original)). Plaintiff has not properly presented any such argument by contending that the ALJ erred under the requirements of the relevant regulation. 20 C.F.R. § 416.920c. Consequently, the court will not consider the argument. *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (declining to consider an argument that was not adequately developed and stating that the court "will not construct an argument" for the plaintiff); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (providing that the court should "consider and discuss only those . . . contentions that have been adequately briefed for . . . review"); *Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009) (declining to consider an argument because the plaintiff failed to support the argument "with any developed argumentation" and stating that "[w]here an appellant lists an issue, but does not support the issue with argument, the issue is waived on appeal" (quotations and citations omitted)); *Murrell v. Shalala*, 43 F.3d 1388, 1390 n.2 (10th Cir. 1994) (concluding that "perfunctory complaints" that "fail to frame and develop an issue" are not "sufficient to invoke appellate review").

[71] *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (alteration in original) (quotations and citation omitted).

record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."[72] "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[73] Evidence is significantly probative only if it would have an impact on a claimant's RFC that renders the claimant disabled.[74]

Plaintiff points to portions of the record that she contends the ALJ ignored. First, Plaintiff claims that the ALJ discussed evidence showing that Plaintiff had normal gait and station but failed to discuss evidence from the same page of that treatment note indicating that Plaintiff "[f]avors the left side when walking" and was "[u]nable to perform" a tandem gait.[75] Second, Plaintiff asserts that the ALJ discussed evidence of a lack of joint abnormalities and favoring the left side of her body but did not discuss that, during the same visit, Dr. Lindenau referred Plaintiff to physical therapy.[76]

Plaintiff's argument fails because the evidence she references was not significantly probative evidence the ALJ was required to discuss. That evidence is not significantly probative

---

[72] *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also Wall*, 561 F.3d at 1067 ("The ALJ is not required to discuss every piece of evidence." (quotations and citation omitted)).

[73] *Clifton*, 79 F.3d at 1010; *see also Wall*, 561 F.3d at 1067 ("[W]e will generally find the ALJ's decision adequate if it discusses the uncontroverted evidence the ALJ chooses not to rely upon and any significantly probative evidence the ALJ decides to reject." (quotations and citation omitted)).

[74] *See, e.g.*, *Bales v. Colvin*, 576 F. App'x 792, 797 (10th Cir. 2014) ("Ms. Bales fails to explain how Dr. Reddy's findings have any bearing on her functional limitations, such that the ALJ should have specifically discussed those findings in setting her RFC for medium work."); *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) (providing that the undiscussed evidence must show that the claimant's "limitations are so great that [she] is permanently disabled").

[75] AR 344.

[76] AR 411, 413.

because it would not have affected the ALJ's RFC assessment. In any event, the ALJ was aware of and discussed evidence concerning Plaintiff favoring her left side.[77] Additionally, as discussed above, there was inconsistent evidence about Plaintiff's gait, and the ALJ appropriately resolved any such inconsistencies. Finally, Plaintiff fails to explain how the ALJ's failure to discuss her physical therapy had any impact on her RFC. In other words, beyond pointing out evidence that the ALJ should have expressly discussed, Plaintiff must show why the discussion of that evidence would have a material impact on the ALJ's disability determination. That didn't happen here. Accordingly, Plaintiff fails to show that the ALJ engaged in impermissible picking and choosing among the evidence.

## CONCLUSION AND ORDER

As demonstrated above, all of Plaintiff's arguments on appeal fail. Therefore, the court HEREBY ORDERS that the Commissioner's decision in this case is AFFIRMED.

IT IS SO ORDERED.

DATED this 4th day of August 2023.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[77] AR 22.